UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

DAVID JERRY PAULE,

                            Plaintiff

      v.

BOB FAULKNER, *et al.*,

                         Defendants

Case No.  2:20-cv-01362-GMN-DJA

**ORDER**

## I.   DISCUSSION

On July 22, 2020, Plaintiff, an inmate in the custody of the Nevada Department of Corrections ("NDOC"), submitted a civil rights complaint under 42 U.S.C. § 1983 and filed an incomplete application to proceed *in forma pauperis*.  (ECF Nos. 1-1, 1).

On July 27, 2020, Plaintiff filed a second application to proceed *in forma pauperis*. (ECF No. 3).  Plaintiff's application at ECF No. 3 is a complete application.  As such, the Court denies Plaintiff's application at ECF No. 1 as moot and will proceed with Plaintiff's *in forma pauperis* application at ECF No. 3.

With respect to Plaintiff's complaint at ECF No. 1-1, it appears that Plaintiff did not include a page 10 with his complaint.  If Plaintiff chooses to include a page 10, Plaintiff may file an amended complaint.  Plaintiff is advised that an amended complaint supersedes (replaces) the original complaint and, thus, the amended complaint must be complete in itself.  *See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989).  Therefore, merely providing the missing page 10 to the Court will not be sufficient.  Plaintiff should file a full amended complaint on this Court's approved prisoner civil rights form, and it must be entitled "First Amended Complaint."

## II.   CONCLUSION

For the foregoing reasons, IT IS ORDERED that Plaintiff's application at ECF No. 1 is denied as moot.

1    IT IS FURTHER ORDERED that the Clerk of the Court shall send to Plaintiff the

2  approved form for filing a § 1983 complaint, instructions for the same, and a copy of his

3  original complaint. (ECF No. 1-1). If Plaintiff chooses to file an amended complaint, he

4  should file a full amended complaint using the Court's approved form and he must write

5  the words "First Amended" above the words "Civil Rights Complaint" in the caption.

6    DATED:  July 28, 2020.

7

8    UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

**INSTRUCTIONS FOR FILING A CIVIL RIGHTS COMPLAINT
BY AN INCARCERATED INDIVIDUAL UNDER 42 U.S.C. § 1983**

### A.    Who May Use This Form

If you are incarcerated, you must use the attached form (unless you are challenging your sentence or conviction, see next paragraph). The attached 42 U.S.C. § 1983 civil rights complaint form is designed to help you prepare a complaint seeking relief for alleged violations of your federal civil rights. These complaints are usually about the conditions of your confinement, but they may relate to other issues (except for your sentence and conviction, see next paragraph).

Do <u>not</u> use this form if you are challenging the length of your sentence or the validity of your conviction. If you want to challenge a state conviction or sentence, you should file a petition under 28 U.S.C. § 2254 for writ of habeas corpus by a person in state custody. If you want to challenge a federal conviction or sentence, you should file a motion under 28 U.S.C. § 2255 to vacate sentence in the federal court that entered judgment.

### B.    Filing a § 1983 Civil Rights Action

To initiate a § 1983 civil rights action, you must submit:

1)    a completed complaint form

<u>and</u>

2)    a check or money order for $400 (which includes the $350 filing fee and the $50 administrative fee), or an inmate application to proceed *in forma pauperis*.

If you can pay the full $400 filing fee, please send a check or money order made payable to "CLERK, U.S. DISTRICT COURT" with your complaint. If you cannot pay the entire filing fee when you submit your complaint, please complete an inmate's application to proceed *in forma pauperis*, which is available at your institution. You may request the packet titled "Information for Filing an Application to Proceed *In Forma Pauperis* by an Inmate under 28 U.S.C. § 1915."

You must file your complaint in the unofficial division where you are incarcerated. *See* Local Rules of Practice for the United States District Court for the District of Nevada ("LR") IA 1-6, 1-8. The Clerk of the Court maintains offices in Las Vegas and Reno at these addresses:

<u>Unofficial Southern Division (Clark, Esmeralda, Lincoln, & Nye counties):</u>
U.S. District Court Office of the Clerk
333 Las Vegas Boulevard, South, Room #1334
Las Vegas, NV 89101

<u>Unofficial Northern Division (all other counties):</u>
U.S. District Court Office of the Clerk
400 S. Virginia Street, Room #301
Reno, NV  89501

Please continue to use electronic filing if it is available at your facility or institution.

**C.**     **Completing the Civil Rights Complaint Form**

*General Information*
- You must complete the form in its entirety. All questions must be answered in order for your action to proceed. Your responses must be typewritten or legibly handwritten. You must sign page 9 of the form and declare under penalty of perjury that the facts stated in the complaint are true and correct.
- Do not write on the back of any of the pages. All information must be clearly and concisely written in the space provided on the form. Do not write in the margins. If you attach additional pages to the form, you must identify which section of the complaint is being continued and number the pages accordingly (e.g., 2-A, 2-B, 3-A, 3-B, etc.).
- All incarcerated litigants are required to follow the Local Rules of Practice for the United States District Court for the District of Nevada. A copy of the Local Rules is maintained at each Nevada Department of Corrections Facility.
- A civil cover sheet is not required in prisoner civil rights cases.

*Heading/Caption*
- Your Name: Print your full name, prison or inmate number, and institutional mailing address on the lines provided.
- Defendants: If there are five or fewer defendants, print the name of each. If you are suing more than five defendants, print the name of the first defendant on the first line and write "see additional pages for defendants" on the second line. On an additional page, you must list the names of all defendants. Insert this additional page after page 1 and number the page "1-A" at the bottom.
- Jury Demand: If you want a jury trial, you must write "JURY TRIAL DEMANDED" in the space below "CIVIL RIGHTS COMPLAINT PURSUANT TO 42 U.S.C. § 1983."
- *Bivens* Action: If you are filing a complaint in which you are naming a federal officer as a defendant instead of a state, county, or city official, you should cross out "42 U.S.C. § 1983" and below it write "*BIVENS* ACTION."

*Part A: Jurisdiction*
- Page 1: Fill in all of the requested information about you on page 1 in the spaces provided.
- Page 2: Fill in all of the requested information about each of the defendants in the spaces provided. If you are naming more than five defendants, then make a copy of page 2 of the form and provide the necessary information for the additional defendants. Label the page(s) "2-A", "2-B", etc. at the bottom of the page and insert the additional page(s) immediately behind page 2.
- Page 3: If you wish to assert jurisdiction under a different or additional statute(s), list them on page 3.

*Part B: Nature of the Case*
- Briefly give an overview of your case by providing general facts about your case. This is not the place to provide detailed information about what each defendant did to violate your rights (see Part C).

*Part C: Cause of Action*
- This is where you identify what rights you claim the defendant(s) violated. The form provides three pages for alleging three claims. If you are alleging more than three claims, then attach an additional page for <u>each</u> additional claim (so that there is only one claim per page). Number the additional pages "6-A," "6-B," etc. and insert the pages immediately behind page 6.
- You must identify which civil rights you claim have been violated.
- You must state <u>facts</u> supporting the violation. You should be as specific as possible and describe what each individual defendant did to violate your rights. You should name the individual defendants and include dates when possible.
- You must follow the Federal Rules of Civil Procedure when drafting your claims and allegations. Your complaint must contain "a short and plain statement of the claim showing that [you are] entitled to relief." Fed. R. Civ. P. 8(a)(2). "Each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). "A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). Each claim founded on a separate transaction or occurrence must be stated in a separate count. *Id.* You may add multiple claims to a lawsuit when those claims are against the same defendant. Fed. R. Civ. P. 18(a). You may add multiple parties to a lawsuit where the right to relief arises out of the "same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(2)(A). Unrelated claims that involve different defendants must be brought in separate lawsuits.

*Part D: Previous Lawsuits*
- You must identify any other lawsuit you have filed in either state or federal court that relates to the same or similar claims that you have alleged in this civil rights complaint.

*Part E: Request for Relief*
- Print the relief you are seeking in the space provided.

*Signature*
- You must sign your name and print the date you signed the complaint. Failure to sign the complaint will delay the processing of your action. If someone wrote this civil rights complaint for you (such as an inmate law clerk), that person must write their name on the line next to your signature.

## D.    Amended Complaints

If you need to change any information in the initial complaint, you must file an amended complaint. The amended complaint must be written on a new, blank copy of the attached civil rights complaint form. The amended complaint must be complete in itself and may not incorporate by reference any part of your prior complaint. Any allegations or defendants not included in the amended complaint are considered abandoned. Please refer to LR 15-1 and Fed. R. Civ. P. 15 for how and when a party may move the court to file an amended complaint.

_____

Name

_____

_____

_____

Prison Number

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

***

_____ ,

Plaintiff

vs.

_____ ,

_____ ,

_____ ,

_____ ,

_____ ,

Defendant(s).

Case No. _____

(Supplied by Clerk of Court)

**CIVIL RIGHTS COMPLAINT
PURSUANT TO
42 U.S.C. § 1983**

## A.      JURISDICTION

1)      This complaint alleges that the civil rights of Plaintiff, _____,

(print plaintiff's name)

who presently resides at _____, were violated by

the actions of the below-named individuals that were directed against Plaintiff at

_____      on      the      following      dates:

(institution/city where violation occurred)

_____, _____, and _____.

(Claim 1)                    (Claim 2)                    (Claim 3)

**Make a copy of this page to provide the below
information if you are naming more than five (5) defendants**

2)    Defendant _____ resides at _____, and is
               (full name of first defendant)          (address of first defendant)

employed  as  _____.  This  defendant  is  sued  in  his/her
                   (defendant's position and title, if any)

___ individual ___ official capacity. (Check one or both.) Explain how this defendant was acting

under color of law: _____

_____


3)    Defendant _____ resides at _____, and is

employed  as  _____.  This  defendant  is  sued  in  his/her

___ individual ___ official capacity. (Check one or both.) Explain how this defendant was acting

under color of law: _____

_____


4)    Defendant _____ resides at _____, and is

employed  as  _____.  This  defendant  is  sued  in  his/her

___ individual ___ official capacity. (Check one or both.) Explain how this defendant was acting

under color of law: _____

_____

5)     Defendant _____ resides at _____, and is employed as _____. This defendant is sued in his/her \_\_\_ individual \_\_\_ official capacity. (Check one or both.) Explain how this defendant was acting under color of law: _____

_____

6)     Defendant _____ resides at _____, and is employed as _____. This defendant is sued in his/her \_\_\_ individual \_\_\_ official capacity. (Check one or both.) Explain how this defendant was acting under color of law: _____

_____

7)     Jurisdiction is invoked pursuant to 28 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1983.  If you wish to assert jurisdiction under different or additional statutes, list them below.

_____

_____

## B.    NATURE OF THE CASE

8)     Briefly state the background of your case.

_____

_____

_____

_____

_____

_____

## C.        CAUSE(S) OF ACTION

### CLAIM 1

The following civil rights have been violated: _____

_____

_____

      Supporting Facts: [Include all facts you consider important.  State the facts clearly,  in
your own words, and without citing legal authority or argument.  Be sure you  describe
exactly what each specific defendant (by name) did to violate your rights].

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

## CLAIM 2

The following civil rights have been violated: _____

_____

_____

      Supporting Facts: [Include all facts you consider important. State the facts clearly, in your own words, and without citing legal authority or argument. Be sure you describe exactly what each specific defendant (by name) did to violate your rights].

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

5

**CLAIM 3**

The  following  civil  rights  have  been  violated:  _____

_____

_____

      Supporting Facts: [Include all facts you consider important.  State the facts clearly,  in your own words, and without citing legal authority or argument.  Be sure you  describe exactly what each specific defendant (by name) did to violate your rights].

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

9)    Have you filed other actions in state or federal courts involving the **same or similar facts** as involved in this action? Circle one: Yes or No. If your answer is "Yes," describe each lawsuit. (If more than one, describe the others on an additional page answering the following questions.)

    a)    Defendants: _____

    b)    Name of court and docket number: _____

    c)    Disposition (for example, was the case dismissed, appealed or is it still pending?):

           _____

    d)    Issues raised: _____

           _____

           _____

    e)    Approximate date it was filed: _____

    f)    Approximate date of disposition: _____

10)    Have you filed an action in federal court that was dismissed because it was determined to be frivolous, malicious, or failed to state a claim upon which relief could be granted? Circle one: Yes or No. If your answer is "Yes," describe each lawsuit. (If you had more than three actions dismissed based on the above reasons, describe the others on an additional page answering the following questions.)

**Lawsuit #1 dismissed as frivolous, malicious, or failed to state a claim:**

    a)    Defendants: _____

    b)    Name of court and case number: _____

    c)    The case was dismissed because it was found to be (circle one): (1) frivolous;

           (2) malicious;  or (3) failed to state a claim upon which relief could be granted.

    d)    Issues raised: _____

           _____

           _____

    e)    Approximate date it was filed: _____

    f)    Approximate date of disposition: _____

7

**Lawsuit #2 dismissed as frivolous, malicious, or failed to state a claim:**

a)    Defendants: _____

b)    Name of court and case number: _____

c)    The case was dismissed because it was found to be (circle one): (1) frivolous;

        (2) malicious;  or (3) failed to state a claim upon which relief could be granted.

d)    Issues raised: _____

        _____

        _____

e)    Approximate date it was filed: _____

f)    Approximate date of disposition: _____

**Lawsuit #3 dismissed as frivolous, malicious, or failed to state a claim:**

a)    Defendants: _____

b)    Name of court and case number: _____

c)    The case was dismissed because it was found to be (circle one): (1) frivolous;

        (2) malicious;  or (3) failed to state a claim upon which relief could be granted.

d)    Issues raised: _____

        _____

        _____

e)    Approximate date it was filed: _____

f)    Approximate date of disposition: _____

**D.     REQUEST FOR RELIEF**

I believe I am entitled to the following relief: _____

_____

_____

_____

_____

_____

_____

I understand that a false statement or answer to any question in this complaint will subject me to penalties of perjury. **I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.** *See* 28 U.S.C. § 1746 and 18 U.S.C. § 1621.


_____         _____
(name of person who prepared or helped                (signature of plaintiff)
prepare this complaint if not the plaintiff)

                                        _____
                                                     (date)

ORIGINAL

DAVID JERRY PAULE
NDOC NO. 70487
HIGH DESERT STATE PRISON ("HDSP")
POST OFFICE BOX 650
INDIAN SPRINGS, NV.
            89070

PLAINTIFF IN PRO SE

_____ FILED      _____ RECEIVED
_____ ENTERED    _____ SERVED ON
           COUNSEL/PARTIES OF RECORD

JUL 22 2020

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ DEPUTY

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

DAVID JERRY PAULE,

                        PLAINTIFF,

        VS.

BOB FAULKNER, HDSP DIRECTOR OF
NURSING ("DON") INDIVIDUALLY AND
IN HIS OFFICIAL CAPACITY; MICHAEL
MINEV, MD., MEDICAL DIRECTOR OF
THE NEVADA DEPARTMENT OF CORREC-
TIONS ("NDOC") INDIVIDUALLY AND
IN HIS OFFICIAL CAPACITY; CHARLES
DANIELS, DIRECTOR OF NDOC INDIVI-
DUALLY AND IN HIS OFFICIAL CAPAC-
ITY; ROBIN HAGER, MEDICAL ADMIN-
ISTRATOR OF NDOC INDIVIDUALLY
AND IN HER OFFICIAL CAPACITY;
THERESA WICKHAM, CHIEF OF NUR-
SING ("CON") OF NDOC INDIVIDU-
ALLY AND IN HER OFFICIAL CAPA-
CITY; CALVIN JOHNSON, WARDEN
OF HDSP INDIVIDUALLY AND IN HIS
OFFICIAL CAPACITY; MONIQUE HUBB-
ARD-PICKETT HDSP ASSOCIATE
WARDEN INDIVIDUALLY AND IN
HER OFFICIAL CAPACITY; R.MANA-
LANG NURSE PRACTITIONER ("NP")
AT HDSP INDIVIDUALLY AND IN
HIS OFFICIAL CAPACITY; SCOTT
MATTINSON, REGISTERED NURSE ("RN")
AT HDSP INDIVIDUALLY AND IN HIS
OFFICIAL CAPACITY; NURSE PERRY IN-
DIVIDUALLY AND IN HER OFFICIAL
CAPACITY; G. WORTHY, HEALTH INFOR-
MATION COORDINATOR ("HIC") AT HDSP

CIVIL ACTION NUMBER

**2:20-cv-01362-GMN-DJA**

COMPLAINT FOR VIOLATION OF
CIVIL RIGHTS UNDER COLOR OF
STATE LAW (28 U.S.C. § 242,
42 U.S.C. § 1983); VIOLATION
OF THE REHABILITATION ACT
("RA") (29 U.S.C. § 794) AND
AMERICANS WITH DISABILITIES
ACT ("ADA") (42 U.S.C. § 12101,
ET. SEQ.); STATE SUPPLEMENTAL
CLAIMS (1) INTENTIONAL INFLIC-
TION OF PAIN, SUFFERING AND
EMOTIONAL DISTRESS; (2) NEGLI-
GENCE; AND DEMAND FOR JURY
TRIAL.

INDIVIDUALLY AND IN HER OFFICIAL CAPAC-
ITY; AND JOHN/JANE DOE'S 1 THRU 50,
INCLUSIVE,

DEFENDANTS.

## I.   INTRODUCTION

1.     THIS IS A CIVIL RIGHTS ACTION FILED BY PLAINTIFF DAVID
JERRY PAULE, PURSUANT TO THE RA/ADA AND CIVIL RIGHTS ACT ALLEG-
ING VIOLATIONS OF THE 1ST, 8TH AND 14TH AMENDMENTS TO THE UNITED
STATES AS WELL AS STATE-SUPPLEMENTAL CLAIM THEORIES UNDER INTEN-
TIONAL INFLICTION OF PAIN, SUFFERING AND EMOTIONAL DISTRESS AND
NEGLIGENCE.

## II.   JURISDICTION AND VENUE

2.     THIS COURT HAS JURISDICTION OVER PLAINTIFF'S CLAIMS OF
FEDERAL CONSTITUTIONAL VIOLATIONS UNDER 28 U.S.C. §§ 242,
1331(1), 1343 AND 1391(B)(2); 29 U.S.C. § 794 AND 42 U.S.C. §§
1983 AND 12101, ET.SEQ. THE COURT HAS SUPPLEMENTAL JURISDICTION
OVER PLAINTIFF'S STATE SUPPLEMENTAL CLAIMS UNDER 28 U.S.C. § 1367.

## III.   CONDITIONS PRECEDENT

3.     ALL CONDITIONS PRECEDENT HAVE BEEN PERFORMED, EXECUTED
AND/OR REASONABLY EXHAUSTED BY PLAINTIFF TO THE EXTENT LAW-
FULLY REQUIRED AND REASONABLY PRACTICABLE PRIOR TO THE INSTALLA-
TION AND COMMENCEMENT OF THIS ACTION.

## IV.   PARTIES

4.     PLAINTIFF DAVID JERRY PAULE ("PLAINTIFF"), IS A
NATURALLY BORN U.S. CITIZEN. AT ALL TIMES RELEVANT TO THIS ACTION,
HE RESIDED AND REMAINED A RESIDENT OF CLARK COUNTY, STATE OF
NEVADA.

5.     DEFENDANT CHARLES DANIELS IS THE DIRECTOR OF THE NDOC AND
IS THE INDIVIDUAL RESPONSIBLE FOR THE OVERALL OPERATION OF NDOC
AND ALL FACILITIES UNDER ITS JURISDICTION INCLUDING HDSP. HE IS
FURTHER RESPONSIBLE FOR THE SAFETY, WELFARE AND HEALTH OF ALL
PRISONERS CONFINED IN NDOC FACILITIES INCLUDING PLAINTIFF, AND
FOR THE HIRING, FIRING, TRAINING AND DISCIPLINE OF ALL NDOC
EMPLOYEES AND FOR THE IMPLEMENTATION, MODIFICATION AND/OR
RESCISSION OF ADMINISTRATIVE REGULATIONS ("AR'S") AND "AGENCY
PROTOCOL" OF NDOC. HE IS SUED IN HIS INDIVIDUAL AND OFFI-
CIAL CAPACITIES.

2

6.      DEFENDANT MICHAEL MINEV, MD., IS NDOC'S MEDICAL DIREC-
TOR AND IS THE INDIVIDUAL RESPONSIBLE FOR THE OVERALL OPERATION AND
MANAGEMENT OF NDOC'S MEDICAL DEPARTMENT IN ALL FACILITIES UNDER NDOC
JURISDICTION INCLUDING HDSP. MINEV IS ALSO RESPONSIBLE FOR THE
PROVISION OF MEDICAL CARE TO ALL PRISONERS CONFINED IN NDOC FACILI-
TIES, INCLUDING PLAINTIFF, AND FOR THE HIRING, FIRING, TRAINING AND
DISCIPLINE OF ALL NDOC MEDICAL PERSONNEL AND FOR THE IMPLEMENTA-
TION, MODIFICATION AND/OR RESCISSION OF MEDICAL AR'S, MEDICAL
DIRECTIVES AND  MEDICAL-RELATED "AGENCY PROTOCOL" OF NDOC. HE ALSO
CHAIRS NDOC'S UTILIZATION REVIEW ("UR") PANEL. HE IS SUED IN
HIS INDIVIDUAL AND OFFICIAL CAPACITIES.

7.      DEFENDANTS DOES 1 THRU 10 ARE MEMBERS OF NDOC AND MINEV'S
UR PANEL. THE NDOC UR PANEL IS A COMMITTEE OF HEALTHCARE PRAC-
TITIONERS AND/OR PHARMACISTS ESTABLISHED TO MANAGE MEDICATION
PRESCRIPTION AND UTILIZATION IN THE NDOC WHO ARE RESPONSIBLE
FOR REVIEW, APPROVAL AND/OR DENIAL OF NDOC UTILIZATION PHYSI-
CIAN RECOMMENDATIONS FOR UTILIZATION OF MEDICATIONS CLASSIFIED
AS "NON-FORMULARY" INCLUDING GABAPENTIN (NEURONTIN). AS
VOTING MEMBERS OF NDOC'S UR PANEL, THEIR COLLECTIVE DECISIONS
AND ACTIONS ARE MADE IN ACCORDANCE WITH AND PURSUANT TO "AGENCY
PROTOCOL" (IE., AR'S AND MEDICAL DIRECTIVES) AND POLICIES IM-
PLEMENTED, RATIFIED AND ENDORSED BY MINEV AND DANIELS AMONG
OTHERS. THESE DEFENDANTS ARE SUED IN THEIR INDIVIDUAL AND OFFI-
CIAL CAPACITIES.

8.      DEFENDANT ROBIN HAGER IS NDOC'S MEDICAL ADMINISTRATOR.
THERESA WICKHAM IS NDOC'S CON. BOB FAULKNER IS THE DON AT HDSP.
R. MANALANG IS A NP AT HDSP. NURSE PERRY IS A NURSE AT HDSP. G.
WORTHY IS A HIC AT HDSP. THEIR RESPECTIVE RESPONSIBILITIES ARE
CODIFIED IN MEDICAL DIRECTIVES, AR'S, POLICIES AND "AGENCY PROTOCOLS"
IMPLEMENTED AND RATIFIED BY DANIELS AND MINEV. AMONGST THEIR
MANY RESPONSIBILITIES ARE THE RESPONSIBILITY OF ENSURING THAT
ALL MEDICAL STAFF UNDER THEIR SUPERVISION AND RESPONSIBILITY
PROVIDE CONSTITUTIONALLY SUFFICIENT AND TIMELY MEDICAL CARE TO
ALL NDOC PRISONERS, INCLUDING PLAINTIFF. EACH OF THEM ARE SUED IN
THEIR INDIVIDUAL AND OFFICIAL CAPACITIES.

9.      DEFENDANT MONIQUE HUBBARD-PICKETT IS AN ASSOCIATE WARD-
EN AT HDSP. SCOTT MATTINSON IS A RN AT HDSP. THEY EACH ARE SUED
IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES.

---

1.  GENERALLY USE OF "DOE" PLEADING TO IDENTIFY A DEFENDANT IS NOT FAVORED. GILLESPIE
V. CIVILETTI, 629 F.2D 637, 642 (9TH CIR. 1980). HOWEVER, COURTS RECOGNIZE THERE
ARE SITUATIONS "WHERE IDENTITY OF DEFENDANTS WILL NOT BE KNOWN PRIOR TO
FILING A COMPLAINT." ID. "IN SUCH CIRCUMSTANCES, PLAINTIFF SHOULD BE GIVEN
OPPORTUNITY THROUGH DISCOVERY TO IDENTIFY UNKNOWN DEFENDANTS UNLESS IT
IS CLEAR DISCOVERY WOULD NOT UNCOVER THE IDENTITIES, OR THAT THE COMPLAINT
WOULD BE DISMISSED ON OTHER GROUNDS." ID. SEE ALSO, MURPHY V. GOORD, 445
F.SUPP. 2D 261, 266 (W.D.N.Y. 2006); AND JONES V. BLANAS, 393 F.3D 918 (9TH
CIR. 2004).

3

10.     DEFENDANT CALVIN JOHNSON IS THE CURRENT WARDEN OF HDSP. HE IS THE CHIEF EXECUTIVE OFFICER AT HDSP. HE IS AND WAS RESPONSIBLE FOR THE GENERAL WELFARE, HEALTH AND TREATMENT OF ALL PRISONERS UNDER HIS CHARGE AT HDSP, INCLUDING PLAINTIFF. HE IS CHARGED WITH THE IMPLEMENTATION OF HDSP POLICES, OPERATIONAL PROCEDURES ("OP'S") AND "AGENCY PROTOCOL" THE HIRING, TRAINING, SUPERVISION, DISCIPLINE AND FIRING OF BOTH MEDICAL AND CUSTODY STAFF AND FOR ENSURING THAT PRISONERS UNDER HIS CHARGE RECEIVE TIMELY, ADEQUATE, EFFICIENT, OBJECTIVE AND CONSTITUTIONAL MEDICAL CARE AND TREATMENTS. HE WAS ALSO RESPONSIBLE FOR ENSURING THAT FACILITY OPERATIONS AND STAFF ACTIONS AND CONDUCTS STAYED WITHIN THE LEGAL CONFINES OF BOTH STATE AND FEDERAL LAWS, THE U.S. CONSTITUTION AND BOTH THE ADA AND RA. HE IS SUED IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES.

11.     DOES 11 THRU 50 ARE INDIVIDUALS, PHYSICIANS, PHARMACISTS, RN'S, LICENSED VOCATIONAL NURSES ("LVNS"), OFFICERS, ADMINISTRATIVE STAFF, CUSTODY, CLASSIFICATION, MEDICAL STAFF, GRIEVANCE COORDINATORS, AND/OR FREE STAFF OF DEFENDANTS LISTED IN PARAGRAPHS 5 THRU 10. DOES 1 THRU 50'S IDENTITIES AND CAPACITIES ARE CURRENTLY UNKNOWN TO PLAINTIFF. AS A RESULT, PLAINTIFF ENLISTS THESE PARTIES BY PSEUDONYMS UNTIL SUCH TIME AS THEIR TRUE IDENTITIES ARE ASCERTAINED. UPON DILIGENT DISCOVERY OF DOES IDENTITIES, PLAINTIFF ANTICIPATES AMENDING THE PLEADINGS TO REFLECT SUCH.

12.     EACH DEFENDANT LISTED IN PARAGRAPHS 5 THRU 11 WERE JOINTLY EMPLOYED WITH, BY OR FOR, CONTRACTED WITH AND/OR CONSPIRED WITH ONE OR MORE DEFENDANTS HEREIN. AT ALL TIMES RELEVANT TO THIS ACTION EACH DEFENDANT ACTED UNDER COLOR OF STATE LAW AND AUTHORITY.

V.     FACTS

13.     FAR PRIOR TO PLAINTIFF'S FEBRUARY 26, 2020 ARRIVAL TO NDOC AT HDSP HE WAS DIAGNOSED AS AND SUFFERED FROM THE LIFE-THREATENING CONDITION AND DISABILITY OF EPILEPSY AMONG OTHER AILMENTS AND MALADIES. AS A EPILEPSY PATIENT, PRIOR TO HIS FEBRUARY 26, 2020 NDOC HDSP ARRIVAL HE HAD INCURRED CLINICAL TRIALS WHICH RESULTED IN DISCOVERY OF THE INEFFECTIVENESS OF MANY ANTI-EPILEPTIC DRUGS ("AED'S") INCLUDING LEVETIRACTAM (AKA KEPPRA) BEFORE BEING PLACED ON THE AED GABAPENTIN (NEURONTIN) WHICH PROVED EFFECTIVE TO CONTROL HIS SEIZURES 97% OF THE TIME WHEN HE WAS MEDICATED.

14.     GABAPENTIN IS A GENERIC MEDICATION THAT IS POPULAR FOR ITS EFFECTIVE USE IN TREATMENT OF SEIZURES AND IS UNIVERSALLY AND WELL-KNOWN BY MEDICAL PROFESSIONALS AS AN ANTI-CONVULSANT (AED). IT IS NOT SCHEDULED AS A CONTROLLED SUBSTANCE AND IS CONSIDERED BY MEDICAL PROFESSIONALS TO HAVE A LOW RISK FOR TOLERANCE OR ADDICTION. PLAINTIFF'S TREATMENT WITH GABAPENTIN WAS MEDICALLY NECESSARY AT ALL TIMES RELEVANT HEREIN.

4

15.    IN INSTANCES IN WHICH PLAINTIFF REMAINS UNMEDICATED FOR RELATIVELY SHORT PERIODS OF TIME, HE EXPERIENCES EXTREMELY VIOLENT, PAINFUL AND INJURIOUS SEIZURE EPISODES. IN FACT, IN ONE PREVIOUS INSTANCE IN WHICH HE WAS FORTUITOUS TO HAVE CAPTURED ON VIDEO FOOTAGE WHERE HE WAS NOT MEDICATED, HE SUFFERED A SEIZURE EPISODE IN WHICH HE FELL STRIKING AND SPLITTING HIS HEAD ON A STEEL BENCH AND VIOLENTLY CONVULSED. THE SEVERITY OF HIS CONDITION AND RESULTING INJURIES FROM SAID EVENT WERE OF SUCH DIRE QUALITY AND OF SUCH SIGNIFI- CANCE SO AS TO WARRANT EMERGENCY LIFE-FLIGHT BY HELICOP- TER TO THE EMERGENCY DEPARTMENT OF UMC FOR ASSESSMENT AND TREATMENT. AS A RESULT OF THIS SEIZURE BOUT HE IN- CURRED SIGNIFICANT CRANIAL INJURY NAMELY A 3 CENTIMETER GASH TO THE POSTERIOR PORTION OF THE RIGHT PARIETAL AREA OF HIS SCALP REQUIRING 6 STAPLES. THIS SUBSTANTIAL HEAD TRAUMA HAS RESULTED IN THE EXASPERATION OF AND FREQUENCY INCREASE IN HIS SEIZURE ONSETS.

16.    PRIOR TO HIS FEBRUARY 26, 2020 TRANSFER TO HDSP DEFENDANTS MINEV, FAULKNER, WICKHAM, HAGER, PERRY, MANALANG, MATTINSON AND DOES 1 THRU 10 AMONGST OTHER DOES ADOPTED, EN- GAGED IN OR KNOWINGLY ACQUIESCED IN DE FACTO USAGES, PRAC- TICES, CUSTOMS, POLICIES, PROCEDURES OR "AGENCY PROTOCOL" THAT WERE REPUDIATIONS TO CONSTITUTIONAL RIGHTS OF PLAINTIFF AND IN WHICH THEY KNOWINGLY, ARBITRARILY, EGREGIOUSLY AND INDIFFERENTLY DISCRIMINATED AGAINST AND SUBJECTED PRISONERS SUCH AS PLAINTIFF WITH THE LIFE-THREATENING SER- IOUS MEDICAL CONDITION AND DISABILITY OF EPILEPSY TO FORESEEABLE AND PREVENTABLE SUFFERINGS, WANTON PAINS AND INJURIES BASED NOT ON OBJECTIVE MEDICAL DATA OF PLAINTIFF AS THE PATIENT AND ADVERSELY AFFECTED PARTY BUT RATHER AND MOST DISTURBINGLY ON THE CONDUCTS AND MEDICATION ABUSIVE HISTORIES OF OTHER INMATES HAVING ABSOLUTELY NO CONNECTION WITH OR RELATIONSHIP TO PLAINTIFF.

17.    NAMELY, SAID ABOVE DEFENDANTS ADOPTED THE BLATANT UNCONSTITUTIONAL PRACTICE, USAGE AND "AGENCY PROTOCOL" OF PERMITTING THE ACTIONS AND ACTIVITIES OF OTHER INMATES TO DIC- TATE, INFLUENCE AND ADVERSELY IMPACT THE EFFECTIVENESS OF TREATMENT OF PLAINTIFF FOR HIS LIFE THREATENING CONDITION AND/OR DEFENDANTS BASED THEIR EGREGIOUSLY MALICIOUS INTER- FERENCES WITH AND INDIFFERENCE TO PLAINTIFF'S LIFE-PRE- SERVING TREATMENT ON THESE FALSE AUSPICES AND PRETEXTS. PAR- TICULARLY, ON ACCOUNT OF CLAIMS THAT OTHER INMATES ABUSED PLAIN- TIFF'S LIFE-PRESERVING AED GABAPENTIN, IMMEDIATELY UPON PLAIN- TIFF'S ARRIVAL TO HDSP THESE DEFENDANTS IDENTIFIED IN PARA- GRAPH NO. 16, SUPRA, ACTING IN ACCORDANCE WITH THESE DE FACTO POLICIES, USAGES AND "AGENCY PROTOCOLS" CAUSED THE CESSATION OF THE AED THEY KNEW WAS EFFECTIVE IN SUPPRESSING HIS SEIZ- URES AND IRRESPECTIVE OF THE LIFE THREATENING IMPLICATIONS IN DOING SO AND FORESEEABLE WANTON INFLICTION OF PAIN, SUFFER- ING AND INJURY TO RESULT TO PLAINTIFF FROM SAID CALLOUS ACT, CON- SCIOUSLY DISREGARDED SAID OBVIOUS RISKS.

5.

18.    ON FEBRUARY 26, 2020 PLAINTIFF ARRIVED TO THE CUSTODY AND CARE OF NDOC AT HDSP WITH A VALID AED GABAPENTIN PRESCRIPTION OF DAILY DOSAGE OF 1200MG BID (TWICE DAILY) AND 600 MG AT NOON. HE HAD NO HISTORY OF DIVERTING, HOARDING OR CHEEKING HIS MEDICATIONS PRIOR TO HIS HDSP ARRIVAL NOR AT ANY POINT OF TIME PRIOR TO THEIR DISCONTINUATION. LESS THAN 24 HOURS FOLLOWING HIS HDSP ARRIVAL AT 3:00 A.M. ON FEBRUARY 27, 2020 HE WAS ALERTED, OVER HIS OBJECTION, THAT HE WAS BEING REMOVED FROM HIS AED GABAPENTIN. INSTANTANEOUSLY HE FILED AN EMERGENCY GRIEVANCE AT 1049 HOURS IN GRIEVANCE NO. 20063097953. IN THIS GRIEVANCE HE COMPLAINED THAT HE WAS BEING DISCONTINUED OFF OF HIS AED GABAPENTIN NEEDED TO CONTROL AND PREVENT LIFE-THREATENING SEIZURES THAT OCCUR WHEN LEFT UNTREATED. PLAINTIFF PLED FOR HELP. THE GRIEVANCE WAS ACCEPTED AND PROCESSED AT 1131 HOURS. AT 1400 HOURS DOE NO. 11 RESPONDED: "NOT AN EMERGENCY YOU GOT HERE YESTERDAY FROM CCDC. WILL HAVE DOCTOR REVIEW YOUR ORDERS." THIS SUBMISSION PLACED DOE 11 ON NOTICE OF PLAINTIFF'S CONDITIONS, SUFFERING AND PREDICTABLE RESULTS OF FAILURE TO PROPERLY MEDICATE HIM AND HIS DESIRE FOR TREATMENT. HAVING THE AUTHORITY AND OPPORTUNITY TO INTERVENE TO PREVENT HIS SUFFERING AND CORRECT THE ERROR, DOE NO. 11 FAILED TO DO SO. DESPITE PLAINTIFF'S ARTICULATION OF THE LIFE THREATENING NATURE OF NOT BEING MEDICATED FOR HIS SEIZURES, DOE NO. 11 REBUFFED THE IMMINENCY OF THE DIRECT THREAT TO PLAINTIFF'S LIFE TO BE "NOT AN EMERGENCY."

19.    ON FEBRUARY 29, 2020, AS PLAINTIFF'S LIFE THREATENING CONDITION GREW MORE DIRE, HE SUBMITTED A EMERGENCY MEDICAL KITE AND/OR SERVICE REPORT ("MKSR") DESIRING TO SEE A DOCTOR DUE TO BEING TAKEN OFF OF HIS AED GABAPENTIN FOR SEIZURES. THIS SUBMISSION PLACED DOE 12 ON NOTICE OF PLAINTIFF'S PLIGHT. HAVING THE AUTHORITY AND OPPORTUNITY TO INTERVENE TO PREVENT HIS SUFFERING AND CORRECT THE ERROR, DOE NO. 12 FAILED TO DO SO. RUBUFFING PLAINTIFF'S CONCERN DOE 12 MERELY RESPONDED ON A UNSPECIFIED DATE "KEPPRA IS ORDERED AS KOP."

20.    OUT OF AN ABUNDANCE OF CAUTION FORESEEING PROSPECTS AND PROPENSITY OF RESULTING LITIGATION, PLAINTIFF IN GOOD FAITH EFFORTS TO COMPORT WITH 42 U.S.C. § 1997E(A), ON MARCH 01, 2020, APPENDING HIS EMERGENCY GRIEVANCE NO. 20063097953 TO INFORMAL GRIEVANCE NO. 20063097965 PLAINTIFF FILED HIS GRIEVANCE AT THE INFORMAL LEVEL ALERTING DOE NO. 13 AND HUBBARD-PICKETT TO HIS MEDICAL DILEMMA AND PLIGHT. THE GRIEVANCE ALERTED THAT HE WAS DISCONTINUED OFF OF HIS AED GABAPENTIN NEEDED FOR HIS SERIOUS SEIZURES WHICH COULD BE LIFE-THREATENING AND DEADLY IF NOT TREATED. HE ADVISED THAT HE HAD INEFFECTIVELY TRIED OTHER AEDS. HE URGED ANY REVIEWER TO CONTACT HIS ATTORNEY CALLIE STEELE SENIOR LITIGATOR AT 213-894-2854. HUBBARD-PICKETT RECEIVED AND REJECTED THE GRIEVANCE ON MARCH 02, 2020 STATING NO FACTUAL HARM/LOSS NOTED, NO ACTION STATED AND NO REMEDY REQUESTED. SHE FORWARDED THE GRIEVANCE TO DOE NO. 13 WHO RECEIVED IT MARCH 03, 2020 AND DID NOT PROCESS IT FOR ANOTHER 16 DAYS DESPITE ITS URGENT NATURE ULTIMATELY REJECTING IT ALSO. BOTH HUBBARD-PICKETT AND DOE 13 HAVING AUTHORITY AND OPPORTUNITY TO INTERVENE CONSCIOUSLY FAILED TO DO SO.

6

21.     ON MARCH 02, 2020 PLAINTIFF SUBMITTED A REQUEST TO HIS CASE WORKER PLEADING FOR HELP DUE TO HIS RAPID DETERIORATION AND INCREASING SEIZURE ACTIVITIES. SHE ADVISED PLAINTIFF THAT SHE ALERTED MEDICAL DEFENDANTS AND THAT THEY ADVISED PLAINTIFF TO SUBMIT MKSR'S. FAULKNER WAS ADVISED OF PLAINTIFF'S SERIOUS SEIZURE DISORDER AND OF THE FACT THAT WHEN NOT MEDICATED PLAINTIFF SUFFERS MAJOR SEIZURES AND HAD HISTORICALLY INCURRED SEVERE CRANIAL INJURY FROM A JUNE 2019 SEIZURE LOSING CONSCIOUSNESS. FAULKNER WAS ADVISED OF THE IMPORTANCE OF PLAINTIFF TO RECEIVE HIS AED GABAPENTIN. BY MKSR DATED MARCH 07, 2020 PLAINTIFF REPORTED THE INEFFECTIVENESS OF THE KEPPRA IN SUPPRESSING HIS SEIZURES. THE RESPONSE PROVIDED SOME 18 DAYS LATER ON MARCH 25, 2020 BY DOE NO. 14 SIMPLY STATED: "PLACED ON PROVIDERS SICK CALL." THIS MKSR PLACED DOE 14 ON NOTICE OF PLAINTIFF'S PLIGHT AND DESPITE HAVING THE AUTHORITY AND OPPORTUNITY TO INTERVENE IN PLAINTIFF'S SUFFERINGS DOE NO. 14 CONSCIOUSLY FAILED TO DO SO. PLAINTIFF'S CASE RECEIVED ANOTHER REQUEST FROM HIM MARCH 07, 2020 PLEADING FOR HELP. SHE RESPONDED 12 DAYS LATER ON MARCH 19, 2020 ADVISING PLAINTIFF AGAIN THAT SHE CONTACTED MEDICAL AGAIN PLACING THEM ON NOTICE. MEDICAL DEFENDANTS SIMPLY RESPONDED THAT PLAINTIFF WAS ON KEPPRA.

22.     ON MARCH 11, 2020 FAULKNER AGAIN WAS DIRECTLY INFORMED OF PLAINTIFF'S DISCONTINUATION OF HIS AED UPON HIS HDSP ARRIVAL AND OF HIS DESPERATE NEED FOR HIS MEDICATION. HE WAS ADVISED THAT PLAINTIFF WAS GIVEN KEPPRA WHICH IS THE WRONG AND INEFFECTIVE AED THAT CONTINUED TO PERMIT HIS SEIZURE BOUTS. DURING THE DIALOG FAULKNER WAS OFFERED A COPY OF THE JUNE 2019 VIDEO DEPICTING THE CONSEQUENCES THAT ATTEND PLAINTIFF WHEN HE IS NOT PROPERLY MEDICATED. FAULKNER CONFIRMED THAT PLAINTIFF'S REMOVAL FROM HIS AED WAS NOT BASED ON CASE SPECIFIC MEDICAL DATA OF PLAINTIFF BUT RATHER "AGENCY PROTOCOL" ADOPTED DUE TO PREVIOUS INSTANCES WHERE "OTHER PRISONERS" ABUSED THEIR GABAPENTIN PRESCRIPTIONS. AGAIN FAULKNER WAS PLACED ON NOTICE OF PLAINTIFF'S CONTINUING SEIZURES ON KEPPRA AND OF THE FACT THAT PLAINTIFF'S CLINICAL CASE WAS UNIQUE AND WORTHY OF PRESENTATION TO DOES 1 THRU 10 AND MNEV TO OBTAIN THEIR APPROVAL TO TREAT HIM WITH THE AED GABAPENTIN KNOWN TO BE EFFECTIVE FOR HIS CONDITION. FAULKNER ADVISED THAT MEDICATIONS ARE WRITTEN AT THE DISCRETION OF FACILITY DOCTORS AND THAT WHILE KEPPRA WAS INEFFECTIVE THERE WAS NO "RIGHT" OR "WRONG" MEDICATION.

23.     ON MARCH 24, 2020 PLAINTIFF RECEIVED GRIEVANCE NO. 20063097965 BACK REJECTED AND ON MARCH 26, 2020 RESUBMITTED IT TO DOE NO. 15 FOR PROCESSING. THE GRIEVANCE PLACED DOE 15 ON NOTICE OF PLAINTIFF'S PLIGHT. IN THE GRIEVANCE PLAINTIFF CONTINUED TO COMPLAIN OF HIS CONTINUING SEIZURES. ON APRIL 20, 2020 FAULKNER WAS AGAIN NOTIFIED OF PLAINTIFF'S CONTINUING COMPLAINTS OF BEING ON THE WRONG AED AND OF HIS CONTINUING SEIZURES AND OF THE FACT THAT HE WAS BEING MADE TO LANGUISH IN HDSP'S FISH TANK IN EXCESS OF THE STANDARD DURATION EACH OTHER INMATE WAS MADE TO STAY IN THE FISH TANK.

24.     IN THE APRIL 20, 2020 DIALOG, FAULKNER WAS ENCOURAGED TO CONTACT PLAINTIFF'S ADVOCATE AND WAS REMINDED OF THE VIDEO FOOTAGE PREVIOUSLY PROVIDED HIM. FAULKNER RESPONDED IN A HOSTILE TONE ACKNOWLEDGING RECEIPT OF THE VIDEO FOOTAGE AGAIN RECITING THE TRAFFICKING PROBLEM HDSP HAD PREVIOUSLY ENCOUN- TERED WITH OTHER INMATES AS THE UNDERLYING BASIS INFLUENCING THE ALTERATION OF PLAINTIFF'S OTHERWISE PROPER SEIZURE CARE. DEFENDANTS WICKHAM AND MATTINSON WERE PRIVY TO THE DIALOG AND WERE AWARE OF PLAINTIFF'S PLIGHT ON APRIL 20, 2020. FAULK- NER EXPRESSED ANNOYANCE WITH THE CONTINUING ADVOCATION OF PLAINTIFF'S PROPER MEDICAL CARE. IN RESPONSE PLAINTIFF'S ADVOCATE WAS SURE TO CONVEY HER INTENT OF SIMPLY TRYING TO HELP PLAINTIFF AND SOUGHT THE IDENTITY OF ANY OTHER PER- SONS FAULKNER SUGGESTED SHE CONTACT PERTAINING TO PLAINTIFF'S CARE. SHE FURTHER INSISTED THAT FAULKNER PROVIDE MINEV THE COMPELLING VIDEO FOOTAGE. SHE FURTHER PLACED DEFENDANT JOHN- SON ON NOTICE OF PLAINTIFF'S DIRE MEDICAL STATE. AWARE OF PLAINTIFF'S PLIGHT, LACK OF PROPER CARE AND SUFFERING AND HAVING THE AUTHORITY AND OPPORTUNITY TO INTERVENE TO CORRECT THE SITUATION, JOHNSON, FAULKNER, WICKHAM AND MATTINSON CONSCIOUSLY FAILED TO DO SO.

25.     ON APRIL 21, 2020 PLAINTIFF WAS SEEN BY DEFENDANTS R. MANALANG AND PERRY. SEVERAL HIPAA WAIVERS WERE EXECUTED IN WHICH THE FACILITY WAS AUTHORIZED TO OBTAIN PLAINTIFF'S MEDICAL RECORDS FROM PREVIOUS PROVIDERS. PLAINTIFF COMPLAINED OF CONTINUOUS SEIZURES OF THE INEFFECTIVENESS OF HIS KEPPRA AND NEED TO RETURN TO HIS AED GABAPENTIN. HE WAS ADVISED THAT HE WOULD BE SCHEDULED TO SEE A DOCTOR. THIS NEVER OCCURRED. IT WAS FURTHER THIS DATE THAT PLAINTIFF WAS RE- HOUSED FROM THE FISH TANK 1 B 6 A TO PROTECTIVE SEGREGA- TION AT 11-F-10-A. KNOWLEDGEABLE OF PLAINTIFF'S PLIGHT AND NEED FOR HIS EFFECTIVE AED, DESPITE HAVING THE OPPORTUNITY AND AUTHORITY TO DO SO, PERRY AND MANALANG FAILED TO COME TO HIS AID.

26.     ANOTHER DIALOG OCCURRED AGAIN ON APRIL 21, 2020 BETWEEN FAULKNER AND PLAINTIFF'S ADVOCATE IN WHICH FAULKNER BECAME CON- TEMPTUOUS OF THE CONTINUING INQUIRIES AND CONCERNS OVER THE ADEQUATE PROVISION OF CARE TO PLAINTIFF CONTENDING THAT THE PARTY WAS ATTEMPTING TO DICTATE THE COURSE OF TREATMENT OF PLAINTIFF'S CARE. FAULKNER ADVISED PLAINTIFF'S ADVOCATE THAT PLAINTIFF'S CARE WAS BEING HANDLED BY MEDICAL PROVIDERS BASED UPON THEIR "PRO- FESSIONAL EXPERTISE AND EVALUATION AND AGENCY PROTOCOL." ADMITTEDLY FAULKNER ADVISED THAT THE FACILITY WAS "WELL AWARE" OF PLAINTIFF'S SEIZURE DISORDER AND FAULKNER SAW NO NEED TO SEND THE VIDEO TO MINEV WHO IS "AWARE OF WHAT A SEIZURE LOOKS LIKE AS ARE ALL OF OUR PROVIDERS." ACCORDING TO FAULKNER, MINEV IS ONLY INVOLVED AT THE DISCRETION OF HDSP'S PHYSICIANS. AGAIN WICKHAM AND MATTINSON WERE PRIVY TO THIS DIALOG, WERE AWARE OF PLAINTIFF'S PLIGHT, LACK OF ADEQUATE CARE AND SUFFERINGS. HAVING THE AUTHORITY AND OPPORTUNITY TO COME TO HIS AID AND INTER- VENE THEY EACH CONSCIOUSLY FAILED TO DO SO PERMITTING HIS SEIZURES TO UNNECESSARILY CONTINUE.

27. PLAINTIFF'S ADVOCATE UNEQUIVOCALLY CLARIFIED THAT SHE WAS NOT TRYING TO "DICTATE" THE COURSE OF PLAINTIFF'S TREATMENT AND WAS JUST PLACING FAULKNER ON NOTICE OF PLAINTIFF'S PLIGHT AT HDSP, OF HIS NEED OF HIS AED THAT IS EFFECTIVE FOR CONTROLLING HIS SEIZURES AND NOT A AED PROVEN INEFFECTIVE PREVIOUSLY AND CURRENTLY TO CONTROL HIS SEIZURES. THE ADVOCATE ADVISED FAULKNER THAT THE AED PLAINTIFF WAS RECEIVING (KEPPRA) WAS COMPLETELY INEFFECTIVE AND WAS NOT SUPPRESSING HIS SEIZURES BUT IN FACT WAS TRIGGERING THEM MORE OFTEN AND HAD PROVEN INEFFECTIVE TO CONTROL HIS SEIZURES IN THE PAST. THE ADVOCATE INSISTED TO BE ADVISED AS TO WHAT WAS BEING DONE TO ADDRESS PLAINTIFF'S CONTINUING SEIZURES AND INJURIES.

28. PLAINTIFF SUBMITTED ANOTHER MKSR ON MAY 13, 2020 COMPLAINING OF THE FACT THAT HE WAS STILL HAVING SEIZURES ON THE KEPPRA AND ITERATING THAT THIS WAS HIS SIXTH REQUEST AND THAT HE WAS GETTING WORRIED FOR HIS SAFETY AND LIFE AGAIN PLEADING FOR HELP CONVEYING "PLEASE HELP ME." HIS ISSUES AND CONCERNS WERE OBFUSCATED AND SUBTERFUGED BY HDSP HIC DEFENDANT G. WORTHY ON MAY 18, 2020 RESPONDING TO THE MKSR IN A MANNER COMPLETELY NON-RESPONSIVE TO PLAINTIFF'S REPORTED CONCERNS. ALTHOUGH ON NOTICE OF PLAINTIFF'S PLIGHT, CONTINUING SEIZURES AND SUFFERINGS AND DESPITE HAVING THE OPPORTUNITY AND AUTHORITY TO DO SO, WORTHY CONSCIOUSLY FAILED TO COME TO PLAINTIFF'S AID.

29. BY MAY 14, 2020 PLAINTIFF RECEIVED NO RESPONSE TO GRIEVANCE NO. 20063097965 SUBMITTED MARCH 26, 2020. IN ACCORDANCE WITH AR 740.03 8 B ON MAY 14, 2020 HE SUBMITTED THE GRIEVANCE TO THE FIRST LEVEL REVIEWER DOE NO. 16. THE GRIEVANCE PLACED DOE 16 ON NOTICE OF PLAINTIFFS PLIGHT, CONTINUING SUFFERING AND SEIZURES. HAVING THE AUTHORITY AND OPPORTUNITY TO DO SO, DOE 16 FAILED TO COME TO PLAINTIFF'S AID TO PREVENT HIS SUFFERINGS AND LACK OF ADEQUATE SEIZURE CARE. THE FOLLOWING DAY ON MAY 15, 2020 PLAINTIFF SUFFERED A SERIOUS SEIZURE. DUE TO THE PRACTICE OF HDSP UNIT 11 STAFF IN NOT ANSWERING CELL CALL BUTTONS DILIGENTLY AND IN A REASONABLE AMOUNT OF TIME, PLAINTIFF'S CELLY WAS INCAPABLE OF SUMMONING STAFF DURING THE COURSE OF PLAINTIFF'S SEIZURE.

30. ON MAY 18, 2020 PLAINTIFF'S PREVIOUS COUNSEL PROVIDED ALL OF PLAINTIFF'S MEDICAL RECORDS TO DEFENDANT FAULKNER. IN DIALOG WITH FAULKNER PLAINTIFF'S ADVOCATE ADVISED FAULKNER THAT ALTHOUGH PLAINTIFF HAD BEEN REMOVED FROM THE FISH TANK HE HAD STILL NOT BEEN SEEN BY A DOCTOR TO ADDRESS HIS CONDITION AND WAS STILL HAVING SEIZURES. PLAINTIFF'S ADVOCATE SOUGHT TO BE ADVISED AS TO WHEN PLAINTIFF WOULD BE EVALUATED BY A DOCTOR. FAULKNER IGNORED THE REQUEST. ON MAY 25, 2020 PLAINTIFF FILED ANOTHER INFORMAL GRIEVANCE COMPLAINING OF SEIZURES SINCE HIS HDSP ARRIVAL AND OF A NECK INJURY. HE CONVEYED HIS NEED FOR HIS PREVIOUS AED THAT WAS EFFECTIVE AND SOUGHT TO SEE A DOCTOR. THIS GRIEVANCE PLACED DOE NO. 17 ON NOTICE OF PLAINTIFF'S PLIGHT, CONTINUING SEIZURES AND SUFFERING. HAVING THE AUTHORITY AND OPPORTUNITY TO INTERVENE TO PREVENT PLAINTIFF'S WANTON SUFFERINGS, DOE 17 CONSCIOUSLY FAILED TO DO SO. AGAIN ON MAY 28, 2020, PLAINTIFF HAD ANOTHER SEIZURE.

9

36. THEY HAVE FURTHER EMPLOYED SAID DILATORY TACTICS IN EFFORTS TO PREVENT PLAINTIFFS PROPER EXHAUSTION IN HOPES OF DISCOURAGING HIM, COLLATERALLY ESTOPPING THIS LITIGATION, CIRCUMVENTING AND OBSTRUCTING HIS COURT ACCESS AND RIGHT TO REDRESS GOVERNMENT FOR REDRESS OF GRIEVANCE, AND DEPRIVING HIM OF HIS RIGHT TO FREE EXPRESSION AND TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENT. DEFENDANTS ACTIONS, INACTIONS AND OMISSIONS WERE CALCULATED TO SADISTICALLY AND SYSTEMATICALLY CONTINUE TO IDLY PERMIT PLAINTIFF'S DEPRIVATION OF CONSTITUTIONALLY WARRANTED HEALTH CARE.

37. DESPITE PLAINTIFF'S UNEQUIVOCAL ADMONISHMENTS TO DEFENDANTS AS SET FORTH AT PARAGRAPH 33, SUPRA, DEFENDANTS AGENTS CONTINUED IN THEIR FAILURE IN TIMELY PROCESSING OR EVEN ACKNOWLEDGING RECEIPT OF HIS GOOD FAITH GRIEVANCES. AS EXPECTED, BY JULY 16, 2020, DOE 21 AND THE FACILITY SIMPLY REFUSED TO RESPOND TO THE CONTINUING GOOD FAITH EFFORTS OF PLAINTIFF.

38. UNDER THE PLED CIRCUMSTANCES, EXHAUSTION LAW RELIEVES PLAINTIFF OF COMPORTING WITH DEFENDANTS DRACONIAN DOUBLE-SIDED, DOUBLE-STANDARD EXHAUSTION SCHEME AND THE PRISON LITIGATION REFORM ACT. ROSS V. BLAKE, 136 S.CT. 1850, 1855, 1858 (2016); WOODFORD V. NGO, 548 U.S. 81, 102 (2006); SAPP V. KIMBRELL, 623 F.3D 813, 822 (9TH CIR. 2010); AND ANDRES V. MARSHAL, 867 F.3D 1076 (9TH CIR. 2017)(WHERE PRISON OFFICIALS FAIL TO RESPOND TO A PRISONER'S GRIEVANCE WITHIN A REASONABLE TIME THE PRISONER IS DEEMED TO HAVE EXHAUSTED AVAILABLE ADMINISTRATIVE REMEDIES WITHIN THE MEANING OF THE PLRA).

39. PLAINTIFF HAS INCURRED AND SUFFERED GREAT PHYSICAL AND PSYCHOLOGICAL PAIN, DISTRESS AND INJURY TO HIS PERSON AS A DIRECT AND PROXIMATE CAUSE OF DEFENDANTS ACTIONS, INACTIONS, OMISSIONS, POLICIES, USAGES, CUSTOMS AND "AGENCY PROTOCOL" AND VIOLATION OF HIS CONSTITUTIONAL RIGHTS AND A FUNDAMENTAL AFFRONT TO HIS HUMAN DIGNITY.

40. TWO OR MORE DEFENDANTS HAD MEETINGS OF THE MINDS ENTERING INTO EXPRESSED OR IMPLIED TACIT AGREEMENTS WITH AND/OR BETWEEN EACH DEFENDANT IN ONE OR MORE SYSTEMATIC CONSPIRACIES TO DENY PRISONERS, INCLUDING PLAINTIFF, AGGRIEVED BY THEIR EGREGIOUS CONDUCTS, ACTIONS, INACTIONS OR OMISSIONS EQUAL PROTECTION OF ALL LAWS, OBSTRUCT THE DUE COURSE OF JUSTICE, DISPARATELY DISCRIMINATE AGAINST, HARASS AND OPPRESS SAID PERSONS ON ACCOUNT OF DISABILITY AND PRECLUDE THEM FROM RECEIVING ADEQUATE AND EFFECTIVE MEDICAL CARE AND TREATMENTS FOR THEIR SERIOUS MEDICAL CONDITIONS AND OTHERWISE DENY THEM DUE PROCESS UNDER THE LAW OR OTHERWISE ALTER, DISCOURAGE, SUPPRESS, PREVENT OR UNREASONABLY AND HARSHLY BURDEN THEIR RIGHT TO PETITION GOVERNMENT FOR REDRESS OF GRIEVANCE, EACH DEFENDANTS' ACTIONS, INACTIONS, OMISSIONS, POLICIES, CUSTOMS, USAGES, PROCEDURES AND "AGENCY PROTOCOLS" CONSTITUTED OVERT ACTS AND WERE IN THE FURTHERANCE OF SAID SCHEMES AND CONSPIRACIES WHICH IN TURN CULTIVATED AND WERE REASONABLY FORESEEABLE TO CULTIVATE AND RESULT IN PLAINTIFF'S RIGHTS UNDER THE 1ST, 8TH AND 14TH AMENDMENTS AND CAUSE GREAT OFFENSE TO HIS ADA/RA PROTECTIONS.

41. EACH OTHER DEFENDANT, HAVING KNOWLEDGE THAT A CONSPIRACY WAS UNDERWAY AND ABOUT TO BE COMMITTED, DID NOTHING TO PREVENT IT BUT RATHER CONDONED, ACQUIESCED IN AND RATIFIED IT.

42. THROUGH SEVERAL MKSR'S, GRIEVANCES AND REQUESTS MADE BY PLAINTIFF AND ONE OR MORE INQUIRES OF HIS ADVOCATE, DEFENDANTS FAULKNER, MINEV, DANIELS, HAGER, WICKHAM, JOHNSON, HUBBARD-PICK-ETT, MANALANG, PERRY, MATTINSON, WORTHY AND DOES 1 THRU 21 AMONGST OTHER DOES WERE PLACED ON NOTICE OF PLAINTIFF'S CON-STITUTIONAL VIOLATIONS, PAINS, DISTRESS, SUFFERINGS, TORMENTS, TORTURES AND HIS DIRE NEED AND DESIRE FOR CONSTITUTIONAL MEDICAL CARE AND TO BE ACCOMMODATED FOR HIS DISABILITY, HAD THE AUTHORITY AND OPPORTUNITY TO INTERVENE, LIMIT, REDUCE, MODIFY AND/OR PREVENT HIS SUFFERINGS AND CONSCIOUSLY FAILED TO COME TO HIS AID IN A REASONABLE TIME AND FASHION.

43. EACH OF THE ABOVE DEFENDANTS ACTIONS, INACTIONS, OMIS-SIONS, INDIFFERENCES, AGENCY PROTOCOLS, USAGES, CUSTOMS, DISCRIM-INATORY ACTIONS AND THE PLED RESULTING CONSTITUTIONAL VIOLA-TIONS WERE PURSUANT TO POLICIES, PRACTICES, CUSTOMS, USAGES AND "AGENCY PROTOCOL" OF FAULKNER, MINEV, DANIELS, HAGER, WICKHAM, JOHNSON, HUBBARD-PICKETT, MANALANG, PERRY, MATTINSON, WORTHY AND DOES 1 THRU 21 AMONG OTHER DOES THAT WERE SO PERMANENT, WIDESPREAD, DEEPLY EMBEDDED AND WELL-SETTLED THAT THEY HAD THE FORCE AND EFFECT OF LAW. THESE DE FACTO POLICIES, CUSTOMS, USAGES, PRACTICES, PROCEDURES AND "AGENCY PROTOCOLS" WERE THE PROXIMATE CAUSE AND MOVING FORCE BEHIND THE VIOLATIONS OF PLAINTIFF'S RIGHTS AND THE RA/ADA.

44. DEFENDANTS RULES, CUSTOMS, POLICIES, PRACTICES, PROCE-DURES, USAGES AND "AGENCY PROTOCOLS" AMONG OTHERS OF IMPEDING, DELAYING, RESTRICTING, DENYING AND INTERFERRING WITH THE PROVISION OF ADEQUATE AND EFFECTIVE MEDICAL CARE SENSELESSLY AND ON BASIS AND GROUNDS UNRELATED TO HIS OBJECTIVE MEDICAL NEEDS (SUCH AS PERMITTING THE MEDICATION ABUSE HISTORY OF OTHER PRISONERS TO DICTATE HIS COURSE OF ADEQUATE CARE) FORE-SEEING ADVERSE OUTCOMES AND UNNECESSARY SUFFERING WOULD OCCUR CONSTITUTED DELIBERATE INDIFFERENCE TO HIS HEALTH, PERSONAL SAFETY, LIFE AND CONSTITUTIONAL RIGHTS CAUSING INJURY TO HER PERSON AND PSYCHE. ALL DEFENDANTS HAD REASON TO KNOW OF FACTS CREATING HIGH RISKS OF PHYSICAL HARM, SUFFERING, PHYSICAL, MENTAL AND EMO-TIONAL PAIN AND DISTRESS AND CONSTITUTIONAL RIGHT VIOLATIONS TO PLAINTIFF AND HIS RA/ADA PROTECTIONS AND ACTED IN CONSCIOUS DISREGARD OF OR INDIFFERENCE TO THESE RISKS.

45. DEFENDANTS FAULKNER, MINEV, DANIELS, HAGER, WICKHAM, JOHNSON, HUBBARD-PICKETT, MATTINSON AND DOES 1 THRU 10 AMONG OTHER DOES' FAILURE TO PROPERLY TRAIN AND SUPERVISE SUBORDI-NATE DEFENDANTS CREATED A HOSTILE WORK AND LIVING EN-VIRONMENT AS WELL AS A HOSTILE CLINICAL TREATMENT ATMOS-PHERE IN WHICH PROFOUND BIAS, RESENTMENT, DISCRIMINATION, HARASSMENT AND HOSTILITY AGAINST DISABLED AND EPILEPTIC PRISONERS BECAME THE NORM AND WAS MET WITH ADMINISTRA-TIVE APPROVAL.

46.    FOR A SUBSTANTIAL AMOUNT OF TIME PRIOR TO, CONTEMPOR-
ANEOUS WITH AND SUBSEQUENT TO EACH PLED VIOLATION, EACH
DEFENDANT MAINTAINED, ENFORCED, TOLERATED, ADOPTED, EMBRACED,
ACQUIESCED IN, RATIFIED AND CONDONED THE FOLLOWING DEFI-
CIENT AND CONSTITUTIONALLY OFFENSIVE DE FACTO POLICIES, PRAC-
TICES, RULES, REGULATIONS, PROCEDURES, CUSTOMS, USAGES AND AGENCY
PROTOCOLS IN ADDITION TO ANY OTHERS IDENTIFIED ABOVE AND
AMONG OTHERS:

A.    WITHHOLDING MEDICAL CARE AS PUNISHMENT OR RETALIA-
TION AND ON DISCRIMINATORY BASIS UNRELATED TO THE
MEDICAL NEEDS OF PRISONERS NOR SUPPORTED BY OBJECTIVE
MEDICAL EVIDENCE;

B.    RECEIVING FEDERAL FUNDING WHILE OPERATING SERVICES,
PROGRAMS, ACTIVITIES AND OPPORTUNITIES IN STARK CON-
TRAST TO ADA/RA MANDATES, OPENLY DISCRIMINATING
AGAINST AND EXCLUDING DISABLED PERSONS FROM THE EN-
JOYMENT OF SERVICES, BENEFITS, PROGRAMS AND OPPOR-
TUNITIES GUARANTEED THEM UNDER THE ADA/RA AND
REFUSING TO ACCOMMODATE SAID PERSONS;

C.    RETAINING, ENACTING, ENFORCING, TOLERATING, PROMULGATING,
ACQUIESCING IN AND CONDONING UNCONSTITUTIONAL POL-
ICIES, CUSTOMS, USAGES, PRACTICES, PROCEDURES AND AGENCY
PROTOCOLS KNOWN TO UNDERMINE AND SABOTAGE EFFEC-
TIVE MEDICAL PROVISIONS TO PATIENTS WHICH RUN
AFOUL OF THE ADA/RA, APPLICABLE STANDARDS OF CARE
AND THEIR CONSTITUTIONAL RIGHTS;

D.    KNOWINGLY RELYING ON UNQUALIFIED INFERIOR MEDICAL
OPINIONS OF NON-TREATING, NON-SPECIALIST MEDICAL EMPLOY-
EES, OR CUSTODY/ADMINISTRATIVE STAFF RATHER THAN NATION-
ALLY ADOPTED AND ACCEPTED STANDARDS OF CARE AND IN
FAILURE TO IMPLEMENT PLANS OF CARE TO AND FOR IN-
MATES WHO ARE EPILEPTIC;

E.    PURPOSEFULLY REFUSING OR FAILING TO INVESTIGATE AND
OBTAIN OBJECTIVE MEDICAL HISTORIES OF CONDITIONS,
DIAGNOSIS AND TREATMENTS OF PRISONERS IN ORDER TO
FLOUT AND JUSTIFY DENIAL OF MEDICALLY NECESSARY CARE
ON NON-MEDICAL BASIS AND FACTORS;

F.    FAILING TO TRAIN AND MONITOR SUBORDINATE MEDICAL,
CUSTODY AND ADMINISTRATIVE STAFF WITH RESPECT TO
FAMILIARIZING THEMSELVES WITH, ENFORCING AND ADHERING
TO AND WITH ALL APPLICABLE OP'S, APS, MEDICAL DIRECTIVES,
OTHER NDOC POLICIES, AGENCY PROTOCOLS, STATE AND FEDERAL
LAWS AND CONSTITUTIONS AND NATIONALLY RECOMMENDED,
ADOPTED AND ACCEPTABLE STANDARDS OF CARE;

13

G. FAILING TO INTERVENE IN INSTANCES OF MEDICAL ABUSE, NEGLECT, INDIFFERENCE AND NDOC/HDSP MEDICAL STAFFS ABUSES OF AUTHORITY AND OTHERWISE TAKING AFFIRMATIVE ACTIONS TO CONCEAL;

H. FAILING TO MONITOR AND RETAINING TROUBLESOME ABUSIVE MEDICAL, CUSTODY AND ADMINISTRATIVE STAFF WHO RETAIN AND/OR HAVE EXHIBITED ABUSIVE PROPENSITY AND WHO DEFIANTLY IGNORE AND DEFY OP'S, AR'S, MEDICAL DIREC- TIVES, AGENCY PROTOCOLS, NATIONALLY APPLICABLE STANDARDS OF CARE AND TREATMENT OF PRISONERS, STATE AND FEDERAL LAWS, CONSTITUTIONAL RIGHTS OF PRISONERS AND OTHER LAWFUL ENTITLEMENTS RETAINED BY PRISONERS UNDER THEIR CARE;

I. PERMITTING WITHOUT FEAR OF DISCIPLINE, REPRISAL OR ACCOUNT- ABILITY THE ARBITRARY ABILITY OF MEDICAL, CUSTODY AND ADMINISTRATIVE STAFF TO SELECTIVELY APPLY AND INTER- PRETE UNAMBIGUOUS MANDATORY POLICIES TO THE DETRIMENT OF PRISONERS;

J. PERMITTING A RAMPANT, WIDESPREAD AND DEEPLY EMBEDDED USAGE, PRACTICE, CUSTOM AND "AGENCY PROTOCOL" OF PER- MITTING THE CONDUCTS AND ACTIVITIES OF OTHER INMATES TO DICTATE A COURSE OF CARE OF ANOTHER PRISONER, THE EFFECTIVENESS AND PROPRIETY OF MEDICAL CARE AND TREATMENT OF A PATIENT AND OTHERWISE PERMITTING THE ACTIVITIES OF OTHER INMATES TO INTERFERE WITH AND NEGATIVELY IMPACT THE TREATMENT OPTIONS OF INMATES LIKE PLAINTIFF WHO POSSESS A LEGITIMATE CLINICAL NEED AND MEDICAL CONDITION BASED ON OBJECTIVE MEDICAL DATA THAT HAVE PROVEN TO BE EFFECTIVELY TREATED WITH THE AED GABAPENTIN;

K. KNOWINGLY REFUSING TO FAIRLY ADHERE TO GRIEVANCE PROCESSES AND CRITERIA INCLUDING RESPONSE TIME CONSTRAINTS AND INMATE ENTITLEMENTS TO EQUITABLE TOLLING OF RIGID RESPONSE TIMES DUE TO CIRCUMSTANCES EXTERNAL TO THEIR CONTROL FOR THE VERY PURPOSE OF OPPRESSING INMATES AND IN EFFORTS TO DISCOURAGE THEIR PURSUIT OF THE PROCESS, FRUSTRATE THEM AND IN EFFORTS AND HOPES OF OBSTRUCTING AND DELAYING THEIR ABILITY TO MEANINGFULLY ACCESS THE JUDICIARY AND OTHERWISE FLOUT AND DENY THEM THE RIGHT TO PETITION GOVERN- MENT FOR REDRESS OF GRIEVANCE AND AS CLOAKED FORMS OF RETALIATION;

L. KNOWINGLY PERMITTING UNQUALIFIED NON-MEDICAL PERSON- NEL/INDIVIDUALS TO DICTATE, PROMULGATE AND IMPLEMENT DEPARTMENTAL MEDICAL POLICIES AND PROCEDURES WITHOUT THE NECESSITY OF ANY FORMAL MEDICAL OR STATE CERTIFI- CATION TO PRACTICE MEDICINE OR RENDER SYSTEMATIC MEDICAL DECISIONS;

14

M.     KNOWINGLY FAILING TO IMPLEMENT AND OPERATE A ORGANIZED AND TIMELY SICK CALL PHYSICIAN REFERRAL PROCESS AND PROCEDURE THAT REDUCES AND PREVENTS FORESEEABLE WANTON SUFFERING, PAINS AND DISTRESSES OF ADVERSELY AFFECTED INMATE PATIENTS;

N.     FAILING TO DISCIPLINE AND TRAIN STAFF IN POLICIES AND TO REFRAIN FROM CONSPIRING WITH CO-EMPLOYEES TO CONCEAL WRONGDOINGS AND OTHERWISE TURN A BLIND EYE TO INSTANCES OF ABUSES IN EFFORTS TO ASSIST CULPRITS EVADE DETECTION, LEGAL REPERCUSSIONS AND ACCOUNTABILITY WITH IMPUNITY AND TO FRUSTRATE AND IMPEDE INMATE LEGAL PROCESSES;

O.     RETAINING AND MAINTAINING AN ATMOSPHERE THAT FOSTERED AND REWARDED ABUSIVE BEHAVIORS AND IN WHICH SYSTEMATIC VIOLATIONS OF CONSTITUTIONAL RIGHTS WERE ACCEPTABLE; AND,

P.     FOSTERING A CODE-OF-SILENCE AMONGST THE RANKS OF NDOC AND HDSP TO SUCH EXTENT THAT ABUSIVE CONDUCTS WERE OMITTED FROM OFFICIAL RECORDS, IGNORED AND ACCEPTED WITH ADMINISTRATIVE APPROVAL.

47.     DEFENDANTS IDENTIFIED AT PARAGRAPH 43, SUPRA, IMPLEMENTED SAID POLICIES, USAGES, CUSTOMS, PRACTICES AND AGENCY PROTOCOLS, KNEW THEY EXISTED AND REASONABLY COULD FORESEE THAT THESE POLICIES, USAGES, CUSTOMS, PRACTICES AND AGENCY PROTOCOLS WOULD INDEED HARM PLAINTIFF, CAUSE HIS SUFFERINGS, PAINS AND INJURY AND VIOLATE HIS RIGHTS. PLAINTIFF INCURRED INJURY AS A PROXIMATE RESULT OF DEFENDANTS ACTIONS, INACTIONS, OMISSIONS, CUSTOMS, USAGES, POLICIES AND AGENCY PROTOCOLS. THE ABOVE SET FORTH ACTS CONSTITUTED ROUTINE DE FACTO POLICIES OF DEFENDANTS. THESE POLICIES OF THE ABOVE DEFENDANTS DIRECTLY CONTRIBUTED TO, WERE THE PROXIMATE CAUSE OF AND MOVING FORCE BEHIND PLAINTIFF'S PAINS, SUFFERINGS, INJURIES, HARMS AND MANY CONSTITUTIONAL VIOLATIONS. IN RETAINING AND ENFORCING SAID POLICIES, USAGES, CUSTOMS, PRACTICES AND AGENCY PROTOCOLS WITH KNOWLEDGE THAT THEY WOULD CAUSE PLAINTIFF HARM, EACH ABOVE DEFENDANT WAS DELIBERATELY INDIFFERENT TO PLAINTIFF'S INJURIES AND VIOLATIONS OF CONSTITUTIONAL RIGHTS FORESEEABLE TO MATERIALIZE.

48.     THE ABOVE POLICIES WERE SO DEFICIENT THAT THE POLICIES THEMSELVES WERE REPUDIATIONS OF CONSTITUTIONAL RIGHTS AND WERE THE MOVING FORCE OF THE CONSTITUTIONAL VIOLATIONS. THESE DE FACTO POLICIES WERE CUSTOMS AND USAGES THAT WERE SO PERMANENT, PERSISTENT, WIDE-SPREAD, LONG STANDING, TOLERATED, MAINTAINED, EMBRACED, DEEPLY EMBEDDED, RATIFIED AND WELL-SETTLED THAT THEY CONSTITUTED POLICY AND HAD THE FORCE OF LAW.

15

49.  DEFENDANTS CONDUCTS, ACTIONS, INACTIONS, OMISSIONS AND "AGENCY PROTOCOL" AS ALLEGED VIOLATED PLAINTIFF'S CONSTITUTIONAL RIGHTS AS GUARANTEED BY THE 1ST, 8TH AND 14TH AMENDMENTS AND WERE ALSO OFFENSIVE OF THE ADA/RA AND VIOLATIVE OF THE ENLISTED STATE TORTS.

50.  DEFENDANTS ACTIONS WERE UNWARRANTED, CALLOUS, CALCULATED, MALICIOUS, SADISTIC AND WICKED.

VI.  LEGAL CLAIMS

FEDERAL CLAIMS

CLAIM I
(42 U.S.C. § 1983)

FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION,' RETALIATION FOR ENGAGING IN 1ST AMENDMENT ACTIVITIES, INTERFERRENCE WITH COURT ACCESS AND THE RIGHT TO PETITION GOVERNMENT FOR REDRESS OF GRIEVANCE AND RIGHT TO FREE EXPRESSION.

51.  PLAINTIFF REINCORPORATES BY REFERENCE PARAGRAPHS 1 THRU 50, INCLUSIVE, AS IF CONTAINED HEREIN AT FULL LENGTH AND AS A FIRST CLAIM FOR RELIEF, ALLEGES:

52.  DEFENDANTS FAULKNER, MINEV, DANIELS, HAGER, WICKHAM, JOHNSON, HUBBARD-PICKETT AND DOES 1 THRU 10 AMONG OTHER DOES ENGAGED IN AND WILLFULLY IMPLEMENTED, RATIFIED, ENDORSED, CONDONED, ENFORCED, MAINTAINED OR ACQUIESCED IN POLICY AND ACTIONS OF ADVERSE NATURES ON ACCOUNT OF PLAINTIFF'S ENGAGEMENT IN PROTECTED FIRST AMENDMENT ACTIVITIES.

53.  PLAINTIFF'S MEDICAL CARE WAS MALICIOUSLY, INDIFFERENTLY AND PURPOSEFULLY DENIED, DELAYED AND SABOTAGED IN RETALIATION AND ON ACCOUNT OF HIS AND HIS ADVOCATES' CONTINUED PATTERN OF COMPLAINTS AND PERSISTENCE IN HIS RIGHT TO FREE EXPRESSION.

54.  THE ACTIONS PERPETRATED BY HUBBARD-PICKETT AND DOES 13, 15, 16, 17 AND 21 AMONG OTHER DOES WERE CALIBRATED AND CALCULATED TO ACTIVELY IMPEDE, FRUSTRATE, DISCOURAGE, PREVENT, DETER, OFF SET AND CIRCUMVENT PLAINTIFF'S JUDICIAL PURSUIT OF THE INSTANT CLAIMS AND PREJUDICE AND FORECLOSE HIS ABILITY TO SEEK JUDICIAL RECOVERY, TO FREE EXPRESSION AND PETITION GOVERNMENT FOR REDRESS OF GRIEVANCE.

55.  ALL SAID ADVERSE ACTIONS WERE IN RESPONSE TO PLAINTIFF AND HIS ADVOCATES REPEATED COMPLAINTS, MKSRS AND DUE TO HIS PURSUIT OF FORMAL GRIEVANCE PROCESSES.

16

56.     THE ACTIVITIES AND POLICIES OF DEFENDANTS AS A RESULT OF PLAINTIFF'S PROTECTED ACTIVITIES EFFECTIVELY SUPPRESSED AND CHILLED HIS FIRST AMENDMENT RIGHTS, CAUSED HIM HARM AND WERE SUFFICIENTLY EGREGIOUS TO DETER ANY PERSON OF ORDINARY FIRMNESS FROM EXERCISING THEIR 1ST AMENDMENT RIGHTS.

57.     PLAINTIFF WAS INJURED IN HIS PERSON AND PSYCHE. HE FURTHER SUFFERED GREAT PAIN, DISTRESS, EMOTIONAL AND MENTAL ANGUISH. DEFENDANTS ACTIONS, OMISSIONS, INACTIONS, CUSTOMS, POLICIES AND/OR AGENCY PROTOCOLS WERE THE DIRECT CAUSE AND MOVING FORCE BEHIND THE INJURIES TO PLAINTIFF AND HIS 1ST AMENDMENT GUARANTEES.

          CLAIM II
          (42 U.S.C. § 1983)

          EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION: DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS.

58.     PLAINTIFF REINCORPORATES BY REFERENCE PARAGRAPHS 1 THRU 57, INCLUSIVE, AS IF CONTAINED HEREIN AT FULL LENGTH AND AS A SECOND CLAIM FOR RELIEF, ALLEGES:

59.     ALL ABOVE DEFENDANTS WERE INDIFFERENT TO THE SERIOUS AND OBVIOUS MEDICAL NEEDS OF PLAINTIFF AND OTHERWISE KNOW-INGLY AND DELIBERATELY IGNORED HIS OBVIOUS AND READILY APPA-RENT NEED FOR MEDICAL INTERVENTION. HE PRESENTED A SERIOUS MEDICAL CASE SUFFERING FROM A LIFE-THREATENING CHRONIC CONDITION THAT WHEN UNTREATED OR IMPROPERLY TREATED AND ACCOMMODATED WERE/WAS FORESEEABLE TO RESULT IN PAIN, SUFFER-ING, INJURIES AND MENTAL AND EMOTIONAL DISTRESS AND VIOLA-TION OF THE CONSTITUTIONAL RIGHTS OF PLAINTIFF.

60.     PLAINTIFF SUFFERED INJURY, HARM AND SUFFERING FROM THESE INSTANCES OF MEDICAL INDIFFERENCES. DEFENDANTS ACT-IONS, INACTIONS AND DE FACTO CUSTOMS, USAGES, PRACTICES, POLI-CIES AND AGENCY PROTOCOLS WERE THE PROXIMATE AND DIRECT CAUSE AND/OR MOVING FORCE BEHIND PLAINTIFF'S INJURIES, HARMS, SUFFERINGS AND CONSTITUTIONAL VIOLATIONS.

          CLAIM III
          (42 U.S.C. § 1985(2)(3))

          CIVIL CONSPIRACY

61.     PLAINTIFF REINCORPORATES BY REFERENCE PARAGRAPHS 1 THRU 60, INCLUSIVE, AS IF CONTAINED HEREIN AT FULL LENGTH AND AS A THIRD CLAIM FOR RELIEF, ALLEGES:

62.     TWO OR MORE DEFENDANTS HAD MEETINGS OF THE MINDS ENTERING INTO EXPRESS OR IMPLIED TACIT AGREEMENTS WITH AND/OR BETWEEN NDOC/HDSP CUSTODY, MEDICAL AND ADMINISTRATIVE STAFF IN ONE OR MORE SYSTEMATIC CONSPIRACIES TO DENY PRISONERS, INCLUDING PLAINTIFF, AGGRIEVED BY THEIR EGREGIOUS CONDUCTS EQUAL PROTECTION OF ALL LAWS, OBSTRUCT THE DUE COURSE OF JUSTICE AND THE TRUTH IN EVIDENCE THROUGH FALSIFYING, ANTE-DATING AND/OR POST DATING OFFICIAL DEPARTMENTAL REPORTS AND RECORDS AND TO DISCRIMINATE AGAINST AND OPPRESS DISABLED PRISONERS FROM RECEIVING ADEQUATE AND EFFECTIVE MEDICAL CARE AND TREATMENT FOR THEIR DIRE CONDITIONS ON THE BASIS OF DISA-BILITY AND AS RETALIATION AND ACTIVELY CONCEALING OR ATTEMPTING TO CONCEAL AND COVER UP SAID MISCONDUCTS AND ABUSES OF POWER AND AUTHORITY.

63.     EACH DEFENDANTS ACTIONS, INACTIONS, OMISSIONS, POLICIES, CUSTOMS, USAGES, PROCEDURES AND AGENCY PROTOCOLS CONSTITUTED OVERT ACTS AND WERE IN THE FURTHERANCE OF SAID SCHEMES AND CONSPIRACIES WHICH IN TURN CULTIVATED INTO VIOLATION OF PLAINTIFF'S RIGHTS UNDER THE 1ST, 8TH AND 14TH AMENDMENTS.

64.     PLAINTIFF WAS INJURED AND HIS RIGHTS VIOLATED. DEFENDANTS ACTIONS, INACTIONS, OMISSIONS, POLICIES, CUSTOMS, USAGES, PROCEDURES AND AGENCY PROTOCOLS WERE THE MOVING FORCE AND PROXIMATE CAUSE OF PLAINTIFFS INJURIES AND CONSTITUTIONAL RIGHT VIOLATIONS.

CLAIM IV
(42 U.S.C. § 1986)

FAILURE TO PREVENT CIVIL CONSPIRACY

65.     PLAINTIFF REINCORPORATES BY REFERENCE PARAGAPHS 1 THRU 64, INCLUSIVE, AS IF CONTAINED HEREIN AT FULL LENGTH AND AS A FOURTH CLAIM FOR RELIEF, ALLEGES:

66.     EACH OTHER DEFENDANT, HAVING KNOWLEDGE THAT (A) CONSPIRACY (IES) WAS/WERE UNDERWAY OR WAS/WERE ABOUT TO BE COMMITTED DID NOTHING TO PREVENT IT/THEM BUT RATHER CONDONED, ACQUIESCED IN AND RATIFIED IT/THEM.

67.     EACH DEFENDANTS' FAILURE TO PREVENT THE END RESULTS OF THE CONSPIRACIES VIOLATED PLAINTIFF'S CONSTITUTIONAL RIGHTS AND CAUSED INJURY TO HIS PERSON.

CLAIM V
(29 U.S.C. § 794; 42 U.S.C. § 12101, ET. SEQ.

EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION; VIOLATION OF THE ADA/RA

68.     PLAINTIFF REINCORPORATES BY REFERENCE PARAGRAPH 1 THRU 67, INCLUSIVE, AS IF CONTAINED HEREIN AT FULL LENGTH AND AS A FIFTH CLAIM FOR RELIEF, ALLEGES:

18

69.     TITLE II OF THE ADA, THE "PUBLIC ENTITY SECTION" PRO-
VIDES THAT NO "QUALIFIED INDIVIDUAL WITH A DISABILITY, SHALL
BY REASON OF SUCH DISABILITY, BE EXCLUDED FROM PARTICIPATION
OR BE DENIED BENEFITS OF THE SERVICES, PROGRAMS OR ACTIVITIES
OF A PUBLIC ENTITY."
70.     PLAINTIFF IS A "QUALIFIED PERSON" UNDER THE ADA/RA
WITH  A EPILEPSY DISABILITY.

71.     SAID EPILEPSY IMPAIRMENT SUBSTANTIALLY LIMITS ONE
OR MORE OF PLAINTIFF'S MAJOR LIFE ACTIVITIES INCLUDING
PERFORMING MANUAL TASKS, CARING FOR HIMSELF, EATING, SLEEPING,
CONCENTRATING AND UNDER SOME CIRCUMSTANCES SUMMONING EMER-
GENCY CARE AT THE MOST CRUCIAL MOMENTS DURING SEIZURE ON-
SETS DUE TO INCAPACITATION.

72.     SAID PHYSICAL IMPAIRMENT OF PLAINTIFF APPEARS IN
RECORDS RETAINED BY NDOC, HDSP AND DEFENDANTS AND PLAINTIFF
IS AND WAS AT ALL RELEVANT TIMES HEREIN REGARDED AS HAVING
SAID APPARENT IMPAIRMENT.

73.     SAID IMPAIRMENT, WHETHER EPISODIC OR IN REMISSION,
SUBSTANTIALLY LIMITED MAJOR LIFE ACTIVITIES OF PLAINTIFF
WHEN ACTIVE AS SET FORTH.
74.     BY VIRTUE OF THE ABOVE MENTIONED DISABILITY PLAINTIFF
WAS EXCLUDED FROM AND/OR DENIED BENEFITS OF SERVICES, PROGRAMS
AND/OR ACTIVITIES BY THE ACTS, OMISSIONS AND/OR INACTIONS
OF DEFENDANTS AS FOLLOWS:

         A). BEING DENIED SEIZURE MEDICATIONS TO ENSURE
         SAFETY, HEALTH AND WELFARE AND ACCOMMODATE HIS
         EPILEPSY; AND,

         B). BEING DENIED TIMELY, ADEQUATE, EFFECTIVE AND EFFI-
         CIENT CARE AND TREATMENT FOR HIS SEIZURE DISORDER.
         NAMELY, BEING RESUMED AND CONTINUED ON HIS AED GABA-
         PENTIN AT EFFECTIVE DOSAGES.

75.     PLAINTIFF WAS DISCRIMINATED AGAINST, DENIED EQUAL
PROTECTION AND HIS CIVIL AND CONSTITUTIONAL RIGHTS VIOLATED.
EACH VIOLATION OF HIS ADA/RA PROTECTIONS WERE PURSUANT TO DE
FACTO POLICIES, CUSTOMS, USAGES, PROCEDURES AND AGENCY PROTO-
COLS WHICH WERE THE PROXIMATE CAUSE AND MOVING FORCE BEHIND
THE VIOLATIONS.
76.     PLAINTIFF WAS NOT PROVIDED MEANINGFUL ACCESS TO THE
PROGRAMS, SERVICES, BENEFITS AND ACTIVITIES THAT PERSONS WITH
DISABILITIES ARE OTHERWISE ENTITLED TO. TO ANY EXTENT THAT
PLAINTIFF WAS NOT COMPLETELY EXCLUDED FROM A PROGRAM, SERVICE,
BENEFIT OR ACTIVITY, HIS ACCESS WAS MADE UNUSUALLY DIFFICULT
AND PAINFUL BY DEFENDANTS FAILURE TO ACCOMMODATE.
77.     PLAINTIFF INCURRED INJURY, HARM AND SUFFERING AS A
RESULT OF DEFENDANTS DISCRIMINATIONS, EXCLUSIONS AND FAILURES
TO ACCOMMODATE.

19

78. DEFENDANTS ACTIONS, INACTIONS AND/OR OMISSIONS DESCRI-
BED WERE THE DIRECT AND PROXIMATE CAUSE OF PLAINTIFF'S IN-
JURIES, HARMS, PAINS AND SUFFERINGS AS WELL AS HIS EXCLUS-
IONS AND DISCRIMINATIONS.

## STATE CLAIMS

## CLAIM VI

## NEGLIGENCE

79. PLAINTIFF REINCORPORATES BY REFERENCE PARAGRAPHS 1
THRU 78, INCLUSIVE, AS IF CONTAINED HEREIN AT FULL LENGTH
AND AS A SIXTH CLAIM FOR RELIEF, ALLEGES:

80. DEFENDANTS OWED A DUTY OF CARE TO PLAINTIFF TO PRO-
VIDE ADEQUATE, RESPONSIVE AND COMPETENT MEDICAL ATTENTION, TO
ACCOMMODATE PLAINTIFF AS A DISABLED PERSON, TO NOT INTERFERE
WITH HIS PRESCRIBED MEDICAL CARE ON NON-MEDICAL BASIS, TO
REFRAIN FROM ADOPTING, IMPLEMENTING AND/OR ENFORCING DE
FACTO POLICIES, CUSTOMS, USAGES, PROCEDURES AND AGENCY
PROTOCOLS THAT VIOLATED PLAINTIFF'S CONSTITUTIONAL RIGHTS,
NOT TO BE INDIFFERENT TO PLAINTIFF'S SERIOUS MEDICAL NEEDS
AND TO NOT BURDEN HIS FREE EXPRESSION OR IMPEDE OR INTER-
FERE WITH HIS ACCESS TO THE COURT AND FREESTANDING RIGHT
TO PETITION GOVERNMENT FOR REDRESS OF GRIEVANCE.

81. EACH DEFENDANT BREACHED THESE DUTIES AS ALLEGED
ABOVE.

82. THESE RESPECTIVE BREACHES WERE THE LEGAL AND
PROXIMATE CAUSES OF PLAINTIFF'S INJURIES, HARMS AND
SUFFERINGS.

83. PLAINTIFF SUFFERED DAMAGES.

## CLAIM VII

## INTENTIONAL INFLICTION OF PAIN, SUFFERING AND EMOT-
IONAL DISTRESS

84. PLAINTIFF REINCORPORATES BY REFERENCE PARAGRAPHS 1
THRU 83, INCLUSIVE, AS IF CONTAINED HEREIN AT FULL LENGTH AND
AS A SEVENTH CLAIM FOR RELIEF, ALLEGES:

85. EACH ABOVE DEFENDANTS' ACTIONS, INACTIONS AND OMISSIONS
WERE INTENDED TO CAUSE PLAINTIFF EMOTIONAL DISTRESS, PAIN AND
SUFFERINGS, WERE OUTRAGEOUS AND WITH RECKLESS DISREGARD TO HIS
SUFFERINGS OF EMOTIONAL DISTRESS. PLAINTIFF ACTUALLY SUFFERED
EXTREME PAIN, SUFFERING AND EMOTIONAL DISTRESS AND DEFENDANTS'
ACTIONS OR OMISSIONS WERE THE PROXIMATE CAUSE OF SAID PAIN,
SUFFERING AND DISTRESS.

## VII  PRAYER

WHEREFORE, PLAINTIFF RESPECTFULLY PRAYS AND URGES THE COURT TO AFFORD RELIEF AS FOLLOWS:

A. AFFORD A DECLARATORY JUDGMENT THAT THE ACTIONS AND POLICIES DESCRIBED, SUPRA, VIOLATE PLAINTIFF'S PERSONAL, CIVIL AND CONSTITUTIONAL RIGHTS;

B. AFFORD AN INJUNCTION UNDER 42 U.S.C. § 1983 TO STOP DEFENDANTS' ILLEGAL CONDUCTS AND PREVENT THEM FROM RECURRING AGAIN IN THE FUTURE;

C. AFFORD COMPENSATORY DAMAGES IN AN AMOUNT IN EXCESS OF $2,500,000.00;

D. AFFORD NOMINAL DAMAGES IN THE AMOUNT OF $1.00;

E. AFFORD PUNITIVE DAMAGES IN AN AMOUNT IN EXCESS OF $300,000.00;

F. FOR LEAVE TO CONFORM THE PLEADINGS TO THE PROOF AT TRIAL; AND,

G. SUCH OTHER AND FURTHER RELIEF AS THIS COURT MAY DEEM JUST, SUITABLE AND EQUITABLE, INCLUDING ANY AND ALL COSTS ASSOCIATED WITH THE INSTALLATION AND PROSECUTION OF THIS ACTION.

## VIII  DECLARATION

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE STATE OF NEVADA AND UNITED STATES THAT THE FOREGOING IS TRUE AND CORRECT.

EXECUTED THIS 19TH DAY OF JULY, 2020.

RESPECTFULLY SUBMITTED,

BY: _____

( DAVID JERRY PAULE )
PLAINTIFF / DECLARANT
IN PRO SE

21